## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TOBY WAYNE SNYDER | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-20-952 |
| MAJOR CRAIG ROWE, | * | |
| DFC GREATHEAD, | | |
| DFC KEMP, | * | |
| WASHINGTON COUNTY DETENTION | | |
|   CENTER, | * | |
| Defendants | * | |

***

### <u>MEMORANDUM</u>

The self-represented plaintiff, Toby Wayne Snyder, filed suit on April 12, 2020, pursuant to 42 U.S.C. § 1983 (ECF 1), along with a Motion for Leave to Proceed in Forma Pauperis.  ECF 2.  Snyder claims that defendants Major Craig Rowe, Captain Doug Moore, DFC Kemp, DFC Greathead, and Washington County Detention Center have violated his right of access to the courts and his right to due process, conspired to violate his civil rights, and defamed him.  He seeks damages from each defendant.  ECF 1 at 6.

### I.        Plaintiff's Allegations

Snyder claims that on March 14, 2019, officers at the Washington County Detention Center ("WCDC") confiscated his legal papers, and he "needed them for his appeals and civil cases in West Virginia and Virginia."  ECF 1 at 3, ¶ B.  Moreover, he insists that the officers "knew [he] needed all [his] legal papers in order to properly apply the law for all [his] appeals in West Virginia and Virginia."  *Id.*  He contends that one of his cases was dismissed with prejudice and another without prejudice, "due to the fact that the plaintiff couldn't respond to the needs of the courts…." *Id.*

Snyder acknowledges that Hagerstown Warrant Task Force Officer John Kreigh took possession of his legal papers and hand-delivered the legal papers on March 14, 2019, and hand-delivered them to Snyder's mother, Dorathy Boden, at her home on Salem Avenue in Hagerstown, Maryland. *Id*. at 3 ¶ C. Snyder also acknowledges that his mother was twice permitted to come to the insitution "to retrieve legal documents that needed to be filed with [his] case in West Virginia," but what he filed "couldn't be backed by any law due to the confiscation of legal papers…." *Id*. at 3, ¶ D. After his mother's second visit with legal papers, Captain Moore refused any more "pick-ups" of documents by Boden. *Id*.

Plaintiff complains that he had to rely on his 72-year-old mother, who has several medical issues, and she had "no idea what she was looking at when it comes to criminal law." *Id*. at 5, ¶ 3. Further, he states that he told the officers that he needed these documents to pursue a post-conviction matter from his conviction on January 14, 2019, in the Circuit Court for Jefferson County, West Virginia in case 18-F-138, and to answer motions in his civil action against Magistrate Judge Senseney, prosecutor Morgan Cramer, State Trooper C. J. Hill, and the West Virginia State Police in case CC-19-2019-C-96, also in the Circuit Court for Jefferson County. ECF 1 at 4.

Snyder blames the dismissal of his civil case, CC-19-29-019-C-96 in the Circuit Court for Jefferson County, West Virginia, on the confiscation of his legal documents. *Id*. at 4, ¶ 2. He states that his claims against Judge Senseney and prosecutor Cramer were dismissed with prejudice and his claims against the West Virginia State Troopers and Trooper C. J. Hill were dismissed, without prejudice. *Id*.[1]

---

[1] Snyder has not provided records from these cases, and West Virginia Circuit Court cases are not available online. A member of this Court's staff was informed by personnel from the Clerk's Office in the Circuit Court for Jefferson County, West Virginia that on January 11, 2019,

Aside from naming DFC Greathead and DFC Kemp as defendants, Snyder asserts no specific allegations against either one. As to Major Rowe, the Warden at WCDC, Snyder claims that he wrote to Major Rowe because he is responsible for jail procedures, but Rowe "ignored" plaintiff's attempts to resolve his concerns about his paperwork. *Id*. at 2, ¶ 3.

On May 14, 2020, Snyder provided notice of his new address on Salem Avenue in Hagerstown. ECF 5. It is the same address that he previously provided for his mother, and presumably where his legal papers are still located.[2]

## II.   Discussion

### A.   In Forma Pauperis and Section 1983

The in forma pauperis statute permits an indigent litigant to initiate an action in federal court, without paying the filing fee. 28 U.S.C. § 1915(a). To protect against possible abuses of this privilege, however, the statute requires a court to dismiss any claim by an indigent litigant if the litigant fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court is mindful of its obligation to construe liberally the pleadings of a pro se litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In evaluating a pro se complaint, a plaintiff's allegations are assumed to be true. *Id*. at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). But, liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs*., 901 F.2d 387 (4th Cir. 1990); *see also Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir.

---

Snyder was convicted of petit larceny and conspiracy in case 18-B-12, for which consecutive one-year sentences were imposed on each count. The case number Snyder provides in the Complaint refers to the criminal case in a lower state court. The Clerk also indicated that civil case 19-C-96, against Magistrate Judge Senseney, prosecutor Cramer and state troopers, was dismissed on August 2, 2019.

[2] Court staff has confirmed that Snyder is no longer confined at WCDC.

1985) (stating a district court may not "conjure up questions never squarely presented."). In making this determination, "[t]he district court need not look beyond the complaint's allegations … [but] must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally." *White v. White,* 886 F. 2d 721, 722–723 (4th Cir. 1989).

Plaintiff has filed suit pursuant to 42 U.S.C. § 1983.  Under § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Blessing v. Firestone*, 520 U.S. 329, 340 (1997); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 707 (1999).  But, to seek redress under § 1983, it is not enough merely to allege a violation of federal law; a violation of a federal right is required. *Carey v. Throwe*, ___ F.3d ___, 2020 WL 2071060, at *7 (4th Cir. Apr. 30, 2020).

"The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245.  To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was

committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement' for Fourteenth Amendment claims, 'and the analysis for each is identical.'" *Davison*, 912 F.3d at 679 (quoting *Philips v. Pitt Co. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (citations and internal quotation marks omitted).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766,

782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1)  That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

## B.  Claims against WCDC

WCDC is a building, not a "person."  Inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not "person[s]" subject to suit under §1983. *See Allison v. California Adult Auth.,* 419 F.2d 822, 823 (9th Cir. 1969) (California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983); *Gottleib v. Baltimore Cty. Detention Ctr., et al.,* Civil Action No. RDB-16-51, 2016 WL 6072348, n.1 (D. Md. Oct. 13, 2016) (noting that Baltimore City Detention Center is a building and not a person amenable to suit under §1983).

Accordingly, the § 1983 suit cannot proceed against WCDC.  Therefore, I shall dismiss the suit as to WCDC.

### C.  Access to Courts

Prisoners have a constitutionally protected right of access to the courts under the First Amendment.  *See Bounds v. Smith*, 430 U. S. 817, 821 (1977).  However, the Supreme Court said in *Lewis v. Casey*, 518 U.S. 343, 355 (1996):

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

"[A] prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' " *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis,* 518 U.S. at 355).  Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" or "arguable" claim was frustrated or impeded because of the denial of access to the courts. *Id.* at 352-53 & n.3.  "[A]ctual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348 (citation and internal quotations omitted).  The complaint must contain a sufficient description of the underlying claim allow assessment of whether it is "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Allegations of injury arising from the denial of access to the courts must be specific and identify how the litigant was harmed.  *See, e.g., Ali v. District of Columbia,* 278 F.3d 1,8 (D.C. Cir. 2002) (holding that an allegation that the failure to transport a prisoner's legal documents to his prison caused his unspecified "open case" to be "set back" did not state a claim of actual injury due to a denial of access to courts); *see also Johnson v. Hamilton*, 452 F.3d 967, 973-74 (8th Cir.

2006) (dismissing an access-to-courts claim arising from the alleged destruction of the prisoner's legal papers because there were no allegation of facts supporting a finding of injury or prejudice). *Cody v. Weber*, 256 F.3d 764, 769-70 (8th Cir. 2001) (holding that lack of access to computer disks containing the prisoner's legal materials did not establish a denial of access to courts because the vague allegation that the stored data would "set him free" was insufficient to establish actual injury).

Snyder asserts that he suffered injury because of the dismissal of his civil case, CC-19-29-019-C-96 in the Circuit Court for Jefferson County, West Virginia. Additionally, he claims injury because he was allegedly unable to file for post-conviction relief with respect to his conviction in Jefferson County, West Virginia on January 14, 2019, in case 18-F-138. ECF 1 at 4, ¶ 1, 5.[3]

In regard to his civil case, Snyder asserts that his claims were dismissed because he could not respond to "motions and all things to that nature," without his legal papers. *Id.* at 3, 4, ¶ 2, 5. Snyder asserts the dismissal of the civil case makes his claims "look false," impugned his credibility, and provides grounds for a defamation claim. *Id.* at 5, ¶ 3.

The Complaint fails to identify a nonfrivolous or arguable claim frustrated by the confiscation of documents so as to establish a First Amendment violation. Snyder's general and conclusory assertions of need are insufficient to state a constitutional claim. The Complaint fails to assert the basis for Snyder's post-conviction claims or his claims in the dismissed civil action. As to Snyder's plans for filing a post-conviction appeal, he does not allege that he missed any

---

[3] Snyder asserts that he also has cases pending in Virginia and Pennsylvania, as well as disciplinary actions against judges and lawyers in West Virginia. He does not provide case numbers, nor does he provide other information about these cases. Snyder fails to describe how the confiscation of his documents impacted his ability to litigate these cases. ECF 1 at 3, 6.

filing deadlines, nor does he identify how the confiscation of his legal papers caused actual legal injury.

### D.  Due Process, Conspiracy, and Defamation Claims

Assuming the facts alleged are true, the Complaint provides no explanation to support a due process claim.  To the extent Snyder claims he was improperly deprived of his papers or they were lost, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), overruled on other grounds by *Daniels v. Williams,* 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533(1984). The right to seek damages and injunctive relief in Maryland courts following exhaustion of applicable administrative remedies under the Maryland Tort Claims Act constitutes an adequate post-deprivation remedy.  *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982). Therefore, Snyder's claim does not rise to a violation of constitutional magnitude.

To establish a civil conspiracy under § 1983, Snyder must present evidence that defendants acted in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right.  *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).  An essential element for a claim of conspiracy to deprive plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators.  *See Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1006-07 (4th Cir. 1987).  Without an agreement, the independent acts of two or more wrongdoers do not amount to a conspiracy.  *See Murdaugh Volkswagen v. First Nat'l Bank*, 639 F.2d 1073, 1075-76 (4th Cir. 1981).  Snyder fails to allege any agreement among defendants to support his conclusory claim of conspiracy to violate his civil rights.

In regard to Snyder's claim of defamation, he fails to allege that defendants made a false and defamatory statement to a third party, so as to establish a state claim for defamation. *Offen v.*

*Brenner*, 402 Md. 191, 198, 935 A.2d 719, 723-24 (2007) (citing *Smith v. Danielczyk*, 928 A.2d 795, 805 (Md. 2007)).  To state a defamation claim in Maryland, a plaintiff must show "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm."  *Offen*, 402 Md. at 198, 935 A.2d at 723-24.

Even if plaintiff stated such a claim, I would not consider it.  Under 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over state law claims when it otherwise has jurisdiction.   But, under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction."  *See ESAB Group, Inc. v. Zurich Insurance* PLC, 685 F.3d 376, 394 (4th Cir. 2012); *Shanaghan v.* Cahill, 58 F.3d 106, 110 (4th Cir. 1995).

This Court declines to exercise supplemental jurisdiction over the defamation claim.  *See Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966)).  Therefore, I shall dismiss the defamation claim, without prejudice.

### III.    Conclusion

For the reasons set forth above, I shall dismiss the Complaint for failure to state a claim. A separate Order follows.


May 22, 2020                                       _____/s/_____
Date                                                      Ellen L. Hollander
                                                               United States District Judge

10